In the Matter of the Application of the BROOKLYN BAR ASSOCIATION in Respect of ANTHONY I. SCALA, an Attorney and Counselor at Law, and JOSEPH J. ASHTON, Admitted as an Attorney and Counselor at Law under the Name of JOSEPH J. ASCIUTTO, JR., Respondents.

Second Department, June 30, 1941.

*George C. Wildermuth* [*Charles Goodwin* with him on the brief], for the petitioner.

*Mitchell May* [*Maurice Knapp* and *Arthur Sheinberg* with him on the brief], for the respondents.

PER CURIAM. Respondent Scala was admitted to the bar on June 28, 1933, and respondent Ashton, under the name of Asciutto, on October 26, 1932. The following facts are found by the official referee and are fairly disclosed by the testimony:

It appears that respondents were dissatisfied with the material returns from their law practice and were conducting a shooting gallery " business " in Pennsylvania while continuing their professional relations in Brooklyn. In December, 1936, with one Nicosia (with whose office they were associated), they formed a New York corporation for the conduct of that " business," intending to operate rifle galleries in California as well as in Pennsylvania. After the formation of the corporation, they continued the " business " in Pennsylvania and at the same time were endeavoring to obtain retainers in negligence cases, indicated by the fact that they carried with them newspaper clippings showing large recoveries

by Nicosia. After several weeks in Pennsylvania, they went to California, where they set up rifle galleries. That this " business " must have been illegal in some aspect is indicated by the fact that they were compelled to discontinue in California because of a ruling by the Attorney-General of that State that prizes could not be given for obtaining certain scores with the rifle. Thereupon they went to Nevada because there, as respondents say, the law was more lenient. While they were making trips back and forth from Los Angeles, where they were living, to Las Vegas, in Nevada, they learned of a serious railroad accident which happened at Brant, Cal. Through a Mrs. Miller, with whom they somehow became acquainted, they were able to procure a retainer from a Mrs. Anderson, a resident of Brant, whose husband was killed in the accident, to adjust her claim. After obtaining this retainer, they agreed to pay one Charters a part of their share of the proceeds as an inducement to him not to interfere with their retainer by procuring a lawyer to represent their client. They also agreed to pay Mrs. Anderson money to support her pending the settlement of her claim. Because of their conduct in connection with this Anderson retainer, respondents were charged in California with soliciting business for a lawyer, with practicing law without being licensed, and with holding themselves out as investigators without being licensed. They pleaded guilty to the charge of practicing law without being licensed and were sentenced to imprisonment in the city jail for 180 days and fined $500 each. The fine was remitted, but they served about 112 days of the sentence. Respondents assert that they pleaded guilty because of their inability to engage a lawyer for want of money, and because of promises made by public officials that sentence would be suspended. The official referee rightly found, in effect, that they acted with full understanding of their situation. The referee also found that, in advertising and holding themselves out as investigators, respondents committed misdemeanors under the California law.

It further appears that an investigation into corrupt practices in negligence cases was being made by a so-called " Rackets Bureau " of the district attorney's office of Kings county. Nicosia, who had been an employer and business associate of respondents, wrote them a letter while they were in California, in which, according to his testimony, there may have been inclosed a newspaper clipping with respect to this investigation. In a letter sent by respondents to Nicosia, the following appears: " At the outset, in view of the note enclosed in yours of the 10th instant, let us suggest that you destroy our letters after reading or else be sure

that they are not brought to the office. No doubt you have already taken that precaution but a little reminder won't hurt. We certainly hope that the office including ourselves will be able to weather the storm. If anything of importance breaks notify us at once at least so that we can be at ease."

The referee has found that respondents, anticipating the above-mentioned investigation and in order to thwart and impede it, directed Nicosia to destroy certain incriminating evidence relative and material to such investigation. Although respondents' explanation of this part of their letter is highly unsatisfactory, there may be some doubt that the correspondence dealt with the investigation. It suggests, at least, a desire and willingness to destroy some proof which might involve respondents in a " storm."

The foregoing is but a general description of the place these respondents occupied in, and their attitude toward, the practice of the law. All of the sordid details are not here disclosed. They have displayed a shocking disregard for the dignity and honor of the profession of which they are members; they have trampled upon the proprieties; they were engaged in what seems to have been an illegal " business;" they committed crime in a sister State. It thus clearly appears that these respondents show that they are lacking in moral appreciation of their duties as lawyers and are wanting in sense of their obligation to maintain its high standards and to uphold its traditions. They were not practicing law; they were in the law " business " as well as in the rifle gallery " business." They were traders. They were not serving any useful purpose as members of the bar.

The official referee, who has had an opportunity to observe and measure the worth of these respondents, recommends that they should be disbarred. The court is compelled to adopt that recommendation.

The motion to confirm the report of the official referee should be granted and respondents disbarred.

Present — LAZANSKY, P. J., HAGARTY, ADEL, TAYLOR and CLOSE, JJ.

Motion to confirm report of official referee granted, respondents disbarred and their names ordered to be struck from the roll of attorneys.